Filed 5/9/14  P. v. Sanchez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>IVAN SANCHEZ,<br><br>    Defendant and Appellant. | G047790<br><br>(Super. Ct. No. 11CF0465)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William R. Froeberg, Judge.  Affirmed.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Deputy Attorney General, for Plaintiff and Respondent.

*          *          *

INTRODUCTION

On February 13, 2011, defendant Ivan Sanchez and his three acquaintances got into a heated argument at a restaurant with a larger group of individuals, about which was the best Mexican state. After Sanchez and his acquaintances were assaulted by members of the larger group as Sanchez's group left the restaurant, they formed a plan to procure a gun and return to the restaurant to retaliate against their attackers. Sanchez returned to the restaurant with a gun, walked up to a restaurant patron who he mistakenly believed was one of the attackers, and fatally shot him in the head.

A jury found Sanchez guilty of first degree murder and also found true that Sanchez caused his victim's death by personally discharging a firearm. Sanchez solely argues on appeal that insufficient evidence supported the jury's finding that he acted with premeditation and deliberation.

We affirm. For the reasons we explain *post*, substantial evidence supported the jury's finding that Sanchez acted with premeditation and deliberation.

FACTS

On February 13, 2011, Esteban Navarrete, his wife, Victoria Navarrete, his niece, and his niece's boyfriend were eating dinner at a restaurant in Santa Ana when a heated argument broke out between two groups of patrons over which state—Sinaloa or Michoacan—was the best state in Mexico. Sanchez was a member of the smaller of the two groups; his group also included Humberto Rivera, Ricardo Rocha, and his sister, Maria Rocha.[1]

Isais Mora was a member of the larger group. When Mora was in the restaurant's bathroom, he heard Sanchez say offensive comments about people from Michoacan. Mora thereafter decided to wait outside the restaurant for Sanchez. As

---

[1] We refer to Esteban Navarrete, Victoria Navarrete, Ricardo Rocha, and Maria Rocha, by their first names for clarity purposes and intend no disrespect.

2

Sanchez left the restaurant, he was assisted by Rivera and Ricardo; Sanchez was drunk and had trouble walking. Outside the restaurant, Mora punched Sanchez in the face. Some of the men from the larger group, who had been arguing inside the restaurant, began hitting Sanchez and his acquaintances. Sanchez and his group got into a dark-colored Ford Explorer. Mora removed his belt and, as the vehicle drove away, struck it with his belt buckle.

Having heard the commotion outside the restaurant, Victoria told Esteban to ask for the bill so that they could leave and go home. Unfortunately, they did not get the bill until 15 to 20 minutes after they asked for it. After they paid the bill, they walked out the front door of the restaurant to Esteban's car. Esteban's niece and her boyfriend got into the backseat of the car and Victoria got into the front passenger seat. Esteban was about to get into the car when Sanchez and Ricardo walked up; Sanchez had a gun in his hand. Esteban said, "it's not us. It's inside. It's over there." Sanchez responded by firing the gun several times, fatally shooting Esteban in the head.

Four days later, Detective Jim Garcia of the Santa Ana Police Department interviewed Sanchez. Initially, Sanchez denied arguing with anyone at the restaurant, having been hit by anyone, or getting a gun, the night of February 13. Sanchez later explained that after he and his three acquaintances were attacked outside the restaurant and drove away, they formed a plan to obtain a gun and return to the restaurant to retaliate against their attackers. Sanchez told Garcia he had "felt disrespected 'cause [he] was with a girl," which "pissed [him] off." Sanchez also said that they went back to the restaurant "'[c]ause we wanted to get them back 'cause of what they done to us, 'cause they hit us without, without doing nothing, when we didn't, we didn't do nothing."

Sanchez told Garcia that after Ricardo got a gun and they drove back to the restaurant, they parked "nose to nose" with Esteban's car; Sanchez and Ricardo got out of the car and Ricardo handed Sanchez the gun. Without saying anything, Sanchez aimed the gun at Esteban and shot him. Sanchez explained to Garcia that he did that "'[c]ause

3

[he] thought it was the guy that, that hit [him]." Sanchez also explained that Esteban had been wearing a shirt similar to the one worn by the man who had hit him.

Sanchez also told Garcia that he and his acquaintances "all agreed" to go back to the restaurant and that no one said, "let's not do this." He said that at that point, it was "too late already" as "they already had the gun." Sanchez said he still wanted to "go through with it" because "we were pissed off. [He] felt disrespected."

PROCEDURAL BACKGROUND

Sanchez was charged in an information with one count of murder in violation of Penal Code section 187, subdivision (a). The information alleged that in the commission of the murder, and pursuant to Penal Code section 12022.53, subdivision (d), and within the meaning of Penal Code sections 1192.7 and 667.5, Sanchez intentionally and personally discharged a firearm proximately causing death to Esteban.

The jury found Sanchez guilty of first degree murder as charged in the information and also found true the enhancement allegation. The trial court sentenced Sanchez to a total prison term of 50 years to life. Sanchez appealed.

DISCUSSION

Sanchez contends insufficient evidence supported the finding he acted with premeditation and deliberation in his commission of the murder of Esteban. We disagree.

"In assessing the sufficiency of the evidence supporting a jury's finding of premeditated and deliberate murder, a reviewing court considers the entire record in the light most favorable to the judgment below to determine whether it contains substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1068-1069 (*Mendoza*).) "'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought

4

and reflection rather than unconsidered or rash impulse.' [Citation.] In this context, "'premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action."' [Citation.] We normally consider three kinds of evidence to determine whether a finding of premeditation and deliberation is adequately supported—preexisting motive, planning activity, and manner of killing—but '[t]hese factors need not be present in any particular combination to find substantial evidence of premeditation and deliberation.' [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 645.)

"'""'Premeditation and deliberation can occur in a brief interval. "The test is not time, but reflection. 'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.'"' [Citation.]" [Citations.]'" (*Mendoza*, *supra*, 52 Cal.4th at p. 1069.) Premeditation and deliberation may be shown by circumstantial evidence. (*People v. Anderson* (1968) 70 Cal.2d 15, 25.)

In this case, substantial evidence of all three factors supported the jury's finding of premeditation and deliberation. Substantial evidence showed a preexisting motive—Sanchez told Garcia he had wished to retaliate against the group of men who had attacked him and his acquaintances outside the restaurant. Sanchez admitted he had returned to the restaurant that night "'[c]ause we wanted to get them back 'cause of what they done to us, 'cause they hit us without, without doing nothing, when we didn't, we didn't do nothing." He stated that after they got a gun, "it was too late" to abort the plan and that he had still wanted to "go through with it" because "we were pissed off. [He] felt disrespected."

Evidence of Sanchez's planning further supported the jury's finding of premeditation and deliberation. During his interview with Garcia, Sanchez admitted his awareness of his group's plan to leave the restaurant, procure a gun, and return with the gun to seek vengeance upon their attackers. (See *People v. Romero* (2008) 44 Cal.4th

5

386, 401 [defendant bringing a weapon to a crime location demonstrates planning activity].) Once they arrived back at the restaurant, Ricardo and Sanchez got out of the car, Ricardo handed the gun to Sanchez, and, without saying a word, Sanchez walked up to Esteban, aimed the gun at him, and fired. The evidence thus supported a finding that the killing of Esteban was not a rash act, and "demonstrate[d] a choice and plan of conduct inconsistent with a conclusion that [Sanchez] did not premeditate the killing." (*People v. Morris* (1959) 174 Cal.App.2d 193, 197.)

Finally, the evidence of the manner of the killing also supported the jury's finding of premeditation and deliberation. After Sanchez, with gun in hand, approached Esteban, evidence showed Esteban pleaded with Sanchez not to shoot, explaining that he, Victoria, his niece, and her boyfriend had not been involved in the altercation at the restaurant earlier that night. Ignoring Esteban's pleas, Sanchez aimed the gun at Esteban and fatally shot him in the head. In *Mendoza*, *supra*, 52 Cal.4th at page 1071, the California Supreme Court stated: "Defendant concedes that a single shot to the head might support the inference of a deliberate intent to kill. We agree. (E.g., *People v. Caro* (1988) 46 Cal.3d 1035, 1050 . . . ['a close-range gunshot to the face is arguably sufficiently "particular and exacting" to permit an inference that defendant was acting according to a preconceived design'].)"

As in *Mendoza*, *supra*, 52 Cal.4th at page 1071, there is no evidence in this case that Sanchez fired the gun in a rash or panicked reaction to something; instead, his action followed his plan of seeking revenge for an altercation that had occurred earlier that night. "Because the manner of killing reflected stealth and precision, a rational jury could conclude that a preconceived design was behind the killing. (See *People v. Halvorsen* (2007) 42 Cal.4th 379, 422 . . . [victims shot in the head or neck from within a few feet]; *People v. Marks* (2003) 31 Cal.4th 197, 232 . . . [noting the calm, cool, and focused manner of the subject shootings].)" (*Ibid.*)

6

As more than substantial evidence supported the jury's finding that Sanchez acted with premeditation and deliberation in the killing of Esteban, we find no error.

DISPOSITION

The judgment is affirmed.

FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.

7